847 P.2d 319

In the Matter of the ESTATE of Joseph C. ROMERO, Deceased, Gilbert Zamora, Personal Representative,

Joseph C. ROMERO, Jr., and Frank E. Romero, By and Through their Guardian and Next Friend, Linda BUSTILLOS, Petitioners/Appellees,

v.

Frances L. NOTT, Claimant/Appellant.

Nos. 12892, 13024.

Court of Appeals of New Mexico.

Jan. 5, 1993.

Debra J. Moulton, Rodney L. Schlagel, Butt, Thornton & Baehr, P.C., Albuquerque, for claimant-appellant.

William J. Darling, Margaret P. Armijo, William J. Darling & Associates, P.A., Albuquerque, for petitioners-appellees.

William N. Henderson, Albuquerque, for the Estate.

## OPINION

BLACK, Judge.

Joseph C. Romero (Decedent) executed a will (the Will) on May 22, 1989 and died on June 28, 1989. He divided his estate between his fiancee, Frances Nott (Nott), and his sons, thirteen-year-old Joseph, Jr., and nine-year-old Frank (Sons). In Paragraph III of the Will, Decedent left the use of his Albuquerque residence to "1) Frances L. Nott so long as she remains unmarried and does not cohabit with an unrelated adult male; and, 2) my sons ... so long as they want to live at the residence, provided their mother does not reside there also."

During a hearing on Sons' motion to name a successor administrator, a hearing of which Nott was not provided any notice and at which she did not appear, the district court ruled that Paragraph III violated public policy and ordered the residence sold and the proceeds distributed under the residuary clause. Nott's arguments can be combined into two basic contentions: (1) she was denied due process when the trial court ruled that Paragraph III violated public policy without allowing her notice or the opportunity to be heard; and (2) the devise to Nott intended by Decedent can be accomplished without violating public policy. As we reverse for an evidentiary hearing to determine Decedent's intent, we need not address the due process issue.

## SUMMARY OF THE FACTS.

Although there was no evidentiary hearing, the parties apparently do not dispute that Decedent was engaged to and living with Nott at the time he learned he had terminal cancer. Decedent's older son, Joseph C. Romero, Jr., also lived with Decedent and Nott at the time Decedent executed his will and until shortly before his death. Decedent's younger son, Frank, lived with his mother, Decedent's ex-wife, at all times. Paragraph III of the Will reads:

I leave the use of my residence at 6323 Locust NE, Albuquerque, New Mexico for: 1) Frances L. Nott so long as she remains unmarried and does not cohabit with an unrelated adult male; and, 2) my sons Joseph C. Romero, Jr. and Frank E. Romero, so long as they want to live at the residence, provided their mother does not reside there also. Frances' living at the residence with either of my sons after they become adults shall not disqualify her from continuing to reside there.

In other words, while legal title to my home will devolve to my Trustee upon my death, beneficial title shall reside in Frances L. Nott and/or Joseph C. Romero, Jr., and/or Frank E. Romero. If Orlinda H. Romero, now known as Linda H.

Bustillos, ever resides in the residence and refuses to leave upon due demand made by the Trustee, the residence shall be sold and the proceeds added to my trust. Likewise, if neither Frances, Joseph nor Frank live in the residence and it is not reasonably probable that Joseph or Frank will move into the residence within three months after the residence is first unoccupied, then beneficial title shall vest in my Trustee, who shall sell the residence and add the proceeds from the sale to the corpus of the trust created herein.

At a hearing on August 16, 1990, Sons' attorney orally argued that the devise contained in Paragraph III was void as against public policy. Nott did not receive notice of the hearing. Nott did not attend the hearing on August 16, nor were her interests represented by an attorney. Neither Sons' original petition, filed November 21, 1989, nor the First Amended Petition raised the issue of the devise violating public policy. At the conclusion of the August 16 hearing, the district court announced that the devise contained in Paragraph III of the Will was against public policy inasmuch as it required that Sons live in the residence without their mother, and the court therefore held the entire devise void. The district court determined that the residence should be appraised and sold, and the proceeds should be placed in the residuary estate, which passed entirely to Sons.

On September 27, 1990, before the district court had entered an order embodying its August 16 ruling, Nott filed a Claim Against the Estate seeking the value of her devise which the trial court had invalidated at the August 16 hearing. The personal representative, Gilbert Zamora, did not object to the Nott claim and affirmatively represented in a signed pleading, "Gilbert Zamora, of his own personal knowledge, knows that Joseph C. Romero [Decedent] intended to benefit Frances L. Nott." Sons, by and through their grandmother, requested the court to disallow the claim against the estate.

The district court held a hearing on Sons' request for an order disallowing Nott's claim against the estate and entered findings and conclusions to the effect that Paragraph III violated public policy. It also held that Nott was not entitled to anything. Two of those findings are the focus of this appeal:

9. The attempted devise to Frances Nott was void as against public policy. It was the apparent intent of the Decedent to give Frances Nott and the Decedent's sons an equal right to occupy and live in the residence. However, it is against public policy to condition the right of the Decedent's minor sons to use the residence on the requirement that they live apart from their mother. It would not be possible to strike the prohibition against the mother living with the Decedent's sons in the residence, since it would not be feasible for both the sons, their mother and Frances Nott to live in the residence together. Accordingly, the only viable alternative is to sell the residence.

10. The devise to Frances Nott can not be accomplished without a violation of public policy and therefore fails and is void from inception.

In Finding 9, the district court found the "attempted devise to Frances Nott was void as against public policy." The basis for the finding that the devise to Nott violates public policy does not appear to turn on the fact that she was given the right to occupy the residence so long as she did not remarry or cohabit, but upon the nature of the right of occupancy given to Decedent's Sons. Decedent's ex-wife, Sons' mother, was precluded from residing in the house and the district court found "it is against public policy to condition the right of the Decedent's minor sons to use the residence on the requirement that they live apart from their mother." Faced with a somewhat similar problem, a Virginia court ordered the testator's widow and deceased son's wife to share the house, without undue obstruction. *White v. White*, 183 Va. 239, 31 S.E.2d 558 (Va.1944). The district court in the present case found that solution "impossible." Rather than postponing Sons' enjoyment until their majority or invalidating only their interest, however,

the district court invalidated the devise to Nott as well.

■ Subject to certain limitations owners may dispose of their property in such manner as they see fit. *Harris v. Harris,* 83 N.M. 441, 493 P.2d 407 (1972). Related to this is the well-recognized rule of construction that in construing a will the court must attempt to give effect to the testator's intent. *In re Estate of Bowles (Vigil v. Bowles),* 107 N.M. 739, 764 P.2d 510 (Ct.App.1988). There are no New Mexico cases specifically applying these rules in the context of will provisions designed to create, or having the effect of creating, a family separation.

Out-of-state authority is inconsistent regarding whether the testator's intent is the polestar in determining whether a will provision is designed to create a family separation which would violate public policy. *Compare Sisson v. Tenafly Trust Co.,* 133 N.J.Eq. 497, 33 A.2d 298 (1943) (indicating that all the surrounding circumstances should be considered in determining the testator's intent); *Morton's Estate,* 13 Pa.D. & C.2d 148 (1957) (same); *Pattee v. Riggs Nat'l Bank,* 124 F.Supp. 552 (D.D.C. 1954) (same), *aff'd per curiam,* 218 F.2d 867 (D.C.Cir.1955) *with Graves v. First Nat'l Bank,* 138 N.W.2d 584 (N.D.1965) (indicating that the language of the will is all that should be considered). *See also* Olin L. Browder, Jr., *Illegal Conditions and Limitations: Effect of Illegality,* 47 Mich.L.Rev. 759, 766 (1949); J.F. Ghent, Annotation, *Wills: Validity of Condition of Gift Depending on Divorce or Separation,* 14 A.L.R.3d 1219 (1967). We believe that the better rule, and the one more in line with our own New Mexico cases, in which the testator's intent governs, is found in the Restatement (Second) of Property.

■ The authors of the Restatement state the general rule for "Provisions Detrimentally Affecting Family Relationship" as follows:

An otherwise effective provision in a donative transfer which is designed to permit the acquisition or retention of an interest in property only in the event of either the continuance of an existing separation or the creation of a future separation of a family relationship, other than that of husband and wife, is invalid where the dominant motive of the transferor was to promote such a separation. Restatement (Second) of Property § 7.2, at 309 (1983). Under the Restatement approach, then, the key to whether a will provision violates public policy is the testator's intent. Where the intent of a testator is not crystal clear from the will itself, the scheme of distribution, circumstances surrounding the testator, and other existing facts should be a subject of judicial inquiry. *Spencer v. Gutierrez,* 99 N.M. 712, 663 P.2d 371 (Ct.App.), *cert. denied,* 99 N.M. 644, 662 P.2d 645 (1983).

In a situation such as that at bar, where the devise is challenged as one designed to undermine the family unit, the authors of the Restatement have recognized a factual inquiry into the testator's dominant motive is necessary:

*Dominant motive of the transferor.* Before a finding of invalidity will be made under the rule stated in this section, it must be first determined that the dominant motive of the transferor was to promote a separation of a family relationship. In ascertaining the presence of [sic] absence of this motive, there must be a complete inquiry into all of the facts and circumstances, including even the direct oral statements of the transferor. . . .

Restatement (Second) of Property § 7.2 cmt. e (1983).

In the instant case, Decedent's dominant motive may well have been to provide Nott a place to live so long as she remained unmarried. Indeed, the only reference to Decedent's intent in the record is the pleading executed by the personal representative stating, "Gilbert Zamora, of his own personal knowledge, knows that Joseph C. Romero [Decedent] intended to benefit Frances L. Nott." If this was, in fact, the dominant motive of Decedent, the provisions allowing his sons to live in the residence before reaching majority may have been ancillary and the prohibition against their mother also living in the residence no

more than a recognition of what the trial court termed "almost an impossible situation."

■ Invalidity should not be inferred where a legitimate purpose may be equally apparent. *Jenkins v. First Nat'l Bank*, 107 F.2d 764 (5th Cir.1939). Without a factual inquiry into Decedent's intent, we are not prepared to determine whether his plan of distribution was designed to further a purpose in violation of public policy.

## CONCLUSION.

■ Based on the present record, we are unable to determine Decedent's dominant motive and we must therefore remand to the district court for a factual inquiry into the motive of Joseph C. Romero in incorporating Paragraph III into his last will and testament. If the district court finds Decedent's primary intent was to benefit Nott, then only that portion of the devise to Sons during their minority would violate public policy and be voidable. If, on the other hand, the district court finds Decedent's primary intent was to separate Sons from their mother and the devise to Nott merely a device to implement this illicit purpose, then all of Paragraph III is violative of public policy and should be stricken. In light of our holding, we need not address Nott's arguments that the district court's invalidation of her devise at the August 16 hearing, of which she received no notice, deprived her of a property right without the due process of law.

This case is reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

ALARID, C.J., and PICKARD, J., concur.