888 P.2d 489

### In the Matter of the ESTATE of Shirley Lee RUSSELL, Deceased.

### Linda COOK–GIBBONS, an individual, and William J. Lee, an individual, Plaintiffs–Appellants,

v.

### Robert E. LEE, Jr., Defendant–Appellee.

### No. 15321.

Court of Appeals of New Mexico.

Nov. 7, 1994.

Certiorari Denied Dec. 19, 1994.

44

Owen C. Rouse, III, Rubin, Katz, Salazar, Alley & Rouse, P.C., Santa Fe, for plaintiffs-appellants.

James G. Whitley, Jones, Snead, Wertheim, Rodriguez & Wentworth, P.A., Santa Fe, for defendant-appellee.

**OPINION**

BOSSON, Judge.

This case involves interpretation of the will of Mrs. Shirley Lee Russell, and specifically the use of the term "personal property." The appeal also raises the issue of when a litigant may exercise his statutory right to excuse a district judge. We affirm the trial court on the latter point. However, we reverse the grant of summary judgment in favor of Defendant, reverse the denial of summary judgment to Plaintiffs regarding the interpretation of the will, and remand for entry of judgment for Plaintiffs.

**FACTS**

The facts are largely undisputed. Mrs. Russell died on November 14, 1992, leaving a valid will. Plaintiffs, Linda Cook–Gibbons and William J. Lee, are the niece and nephew of Mrs. Russell, and Defendant Robert E. Lee, Jr. is also a nephew. At the time of Mrs. Russell's death, she owned real property valued at $149,000, and securities, bank accounts, and other property worth over $375,000. Mrs. Russell's will, drafted by an attorney, provided in relevant part:

III.

I make the following specified devised [sic] and bequests:

A. My home ... I give, devise and bequeath unto my nephews, ROBERT E. LEE, JR., and WILLIAM J. LEE, and to my niece, LINDA (Mrs. T.A.) COOK, in equal shares....

B. As provided by New Mexico law, I am leaving with this Will a letter directing the disposition of items of personal property located in my home, or otherwise owned by me, directing that my Personal Representative, hereinafter named, shall follow these instructions as though fully set out herein. As to any items of personal property the disposition of which is not covered by the letter of instructions, such personal property I give and bequeath to my nephews ROBERT E. LEE, JR., WILLIAM J. LEE, and my niece, LINDA (Mrs. T.A.) COOK, or to the survivors of them.

....

IV.

All of the rest and residue of my estate, whether real, or personal, wherever situate, I give, devise and bequeath to my nephew, ROBERT E. LEE, JR., or to his children surviving him.

In accordance with article III, paragraph B of her will and NMSA 1978, Section 45-2-513 (Repl.Pamp.1993), Mrs. Russell left a letter of instructions giving various items of tangible personal property to named individuals and institutions.

On December 8, 1992, after Mrs. Russell's death, Defendant, as personal representative, filed an application for informal probate ("probate proceeding"). Plaintiffs demanded that Defendant post a bond of at least $450,-000 before serving as personal representative. In response, Defendant petitioned the trial court to excuse him from posting a bond. A hearing was set for May 18, 1993.

Prior to the hearing, Plaintiffs acquiesced in a "Stipulation that Personal Representative May Serve Without Bond." Defendant appeared alone at the May 18 hearing and obtained an order waiving bond. Thereafter, Plaintiffs signed a stipulated order withdrawing their request that Defendant post a bond. That order was entered by the court without presentment on June 3, 1993.

On July 8, 1993, Plaintiffs filed a separate action, independent of the probate proceeding, styled "Petition for Declaratory Relief (Construction of Will)." Four days later, Plaintiffs filed a motion for summary judgment asserting that as a matter of law under article III, paragraph B of Mrs. Russell's will, they were entitled to share equally with Defendant in all personal property, both tangible and intangible. Defendant then moved to consolidate the two cases within the informal probate proceeding and filed his own petition for declaratory relief and motion for summary judgment in that case. Defendant took the position that Mrs. Russell's will implicitly made a distinction between tangible and intangible personal property, and only the former was devised equally among the niece and nephews; intangible personal property was to pass to Defendant alone under the residuary clause. Affidavits were tendered by both parties in support of their positions.

On August 16, 1993, Plaintiffs filed their first Notice of Excusal of the trial judge in the probate proceeding. The judge rejected the attempt at excusal and consolidated both cases within his jurisdiction. Plaintiffs then filed a second Notice of Excusal, this time in the separate civil action which had been consolidated. However, no further action was ever taken by the parties or the trial judge in regards to this Notice of Excusal, and the court proceeded to act in the consolidated case.

On November 1, 1993, the trial court heard the cross motions for summary judgment, as well as testimonial evidence. The court construed paragraph B of article III to dispose only of tangible personal property, and determined that all other personal property (including all intangible property) passed to Defendant alone under the residuary clause. Summary judgment was entered for Defendant.

**DISCUSSION**

**1. SUMMARY JUDGMENT**

In construing a decedent's will, the court must attempt to ascertain and give effect to the testator's intent. *In re Estate of Romero,* 115 N.M. 85, 88, 847 P.2d 319, 322 (Ct.App.1993); *In re Estate of Bowles,* 107 N.M. 739, 740, 764 P.2d 510, 511 (Ct.App. 1988); *see also In re Estate of Coleman,* 104 N.M. 192, 195, 718 P.2d 702, 705 (Ct.App. 1986) (intent as expressed in testator's will controls the legal effect of disposition). *See generally* 4 William J. Bowe & Douglas J. Parker, *Page on the Law of Wills* § 30.1, at 2 (3d ed. 1961). Intent is determined by considering the language within the four corners of the will, the scheme of distribution, and the circumstances surrounding its execution. *See In re Estate of Padilla,* 97 N.M. 508, 513, 641 P.2d 539, 544 (Ct.App.1982).

In our view, the language Mrs. Russell used to devise her "personal property" is clear and unambiguous; it devises "any items of personal property" equally among her niece and nephews. The meaning of

"personal property" is just as unmistakable; "absent language in the will indicating an intent to the contrary, the term 'personal property' includes both tangible and intangible personal property." *See McFadden v. Murray,* 32 N.M. 361, 365, 257 P. 999, 1001 (1927) (personal property includes everything which is the subject of ownership except real estate); *see also Portales Nat'l Bank v. Bellin,* 98 N.M. 113, 117, 645 P.2d 986, 990 (Ct.App.1982) ("Absent any indication in the will itself that the testator intended otherwise, the customary and normal meaning of the words as written should prevail."); *Emmert v. Hearn,* 309 Md. 19, 522 A.2d 377, 380 (1987) (absent contrary indication from the will itself, "personal property" should be construed broadly); Bowe–Parker § 33.24, at 334 (" 'personal property' includes every form of personal property from whatever source it may be derived, ... except real property"); George W. Thompson, *The Law of Wills* § 240, at 376 (3d ed. 1947); Black's Law Dictionary 1217 (6th ed. 1990) (personal property includes "all property other than real estate").

Defendant contends the term "personal property" is restricted in paragraph B of article III of Mrs. Russell's will by the phrase "as provided by New Mexico law." He argues that this language refers to Section 45–2–513 which permits a deceased to dispose of tangible personal property by an informal letter. Therefore, Defendant suggests that the phrase "personal property" as used in this paragraph is limited to tangible personal property; i.e., only the kind of property that could be disposed of by Section 45–2–513. Defendant also asserts the second use of "personal property" in the paragraph was similarly restricted to tangible property, since it also refers to the letter of instruction. Defendant contrasts this with the residuary clause of the will, where "personal property" is not so limited.

We disagree. It would have been easy for Mrs. Russell to make it obvious that she wanted Defendant alone to receive her intangible property; she simply had to modify the phrase "personal property" with the word "tangible" or "intangible" and there would have been no doubt. The difference between

tangible and intangible property would have been important to Mrs. Russell, because it involved a substantial portion of her estate. Nothing in the language of the will indicates that Mrs. Russell intended to make the distinction urged by Defendant. Instead, the words employed in the will made no distinction between "tangible" or "intangible" property.

An example of unambiguous intent to distinguish between tangible and intangible personal property is found *In re Estate of Schmidt,* 638 P.2d 809 (Colo.Ct.App.) (Tursi, J., dissenting), *cert. denied* (Dec. 21, 1981), cited by Defendant. In *Schmidt,* a section of the will titled "Tangible Personal Property" referred to "personal property," and a Colorado statute similar to our Section 45–2–513 allowed the testator to devise specific *tangible* personal property through a separate letter. *Schmidt,* 638 P.2d at 810–11. Although the court limited "personal property" in that section to tangible personal property, the will clearly indicated by its title that only tangible personal property was to be devised in that section. The dissenting opinion noted that, but for the title, the intent of the testator would have been "to use *personal property* in an unmodified sense." *Id.*

We conclude that Mrs. Russell's intent is clear from the document and can be construed without extrinsic evidence. Our conclusion is supported by the parties who, through their counsel, agreed at oral argument that the will should be interpreted as a matter of law without additional evidence or further delay. Therefore, we resolve the disagreement and hold that article III, paragraph B of Mrs. Russell's will unambiguously devises all her "personal property," both tangible and intangible, equally to Plaintiffs and Defendant.

### 2. EXCUSAL OF TRIAL JUDGE

■ The trial judge rejected Plaintiffs' first Notice of Excusal which was filed in the probate proceeding, on the basis that Plaintiffs had already invoked the discretion of the court by filing their demand for bond. *See Smith v. Martinez,* 96 N.M. 440, 442, 631 P.2d 1308, 1310 (1981) (court may not be statutorily disqualified after a party has in-

voked the discretion of the court). We agree. Plaintiffs' petition for bond was accompanied by serious allegations against Defendant that he may have mishandled the assets of the estate. Defendant opposed the posting of bond. Although the parties eventually stipulated to a waiver of bond, the trial judge was still required to approve the stipulation in light of the serious allegations of impropriety. The approval required the trial judge to exercise discretion and is sufficient to bar Plaintiffs' tardy attempt at excusal. *See JMB Retail Properties Co. v. Eastburn,* 114 N.M. 115, 118, 835 P.2d 831, 834 (1992) (approval of agreed upon motion for extension of time invoked discretion of the court); *cf. kSaavedra v. Thomson,* 114 N.M. 718, 719, 845 P.2d 812, 813 (1992) (mere agreement not to oppose motion, without more, not act invoking judicial discretion).

Alternatively, Plaintiffs assert that since there were two separate proceedings, an informal probate proceeding and a formal civil proceeding for declaratory relief, they had a separate right to challenge the judicial designation for each proceeding. Since no judicial discretion was ever invoked in the second, formal proceeding, Plaintiffs argue that their Notice of Excusal was timely and the trial court should have stepped aside.

Assuming Plaintiffs are correct that there were two separate proceedings, it is also true that the second Notice of Excusal was never acted upon by parties or the court. Plaintiffs, as movants, had the burden to pursue excusal in the trial court, yet Plaintiffs proceeded with the case without forcing the court directly to address the issue. In this regard, we agree with Defendant that Plaintiffs effectively abandoned or waived whatever excusal rights may have existed at that time. *Cf. Davis v. Davis,* 83 N.M. 787, 789, 498 P.2d 674, 676 (1972) (appellant will not be heard to raise claim of error by trial court where it was not pursued below).

## CONCLUSION

We affirm the order denying Plaintiffs' attempt to excuse the trial judge. We reverse the order granting summary judgment to Defendant and the order denying summary judgment to Plaintiffs. This cause is remanded with instructions to enter summary judgment for the Plaintiffs. Plaintiffs are awarded their costs on appeal.

**IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.